NFS Services, Inc., Respondent, v West 73rd Street Associates et al., Appellants.

First Department, June 28, 1984

### APPEARANCES OF COUNSEL

*Norman L. Rosenthal* for appellants.

*Robert J. Poulson, Jr.,* of counsel (*Poulson & Desmond,* attorneys), for respondent.

*Melvyn R. Leventhal, Richard G. Liskov* and *John M. Farrar* of counsel (*Robert Abrams, Attorney-General,* attorney), for the Department of State of the State of New York, *amicus curiae.*

### OPINION OF THE COURT

Kassal, J.

The issue on this appeal is whether a real estate broker, licensed in the State of New Jersey but not in New York, may recover for brokerage services rendered in this State.

On February 28, 1979, West 73rd Street Associates (Associates), the owner of 11 Riverside Drive in Manhattan, entered into a letter agreement whereby Associates agreed to pay M. L. Schultz Co. 10% of the profits derived "when, as and if earned by Associates from and upon conversion or sale of the premises if Associates makes a deal concerning these Premises with your client." The

agreement also provided that if Schultz' client produced financing acceptable to Associates, the latter would pay $200,000 as an advance against the 10% profit sharing. The same day, Schultz assigned to NFS Services, Inc. (NFS), "all rights, title and interest in and to a certain real estate listing between Robert I. Postel as General Partner of West 73rd Street Associates and M.L. Schultz Co. dated February 28, 1979".

NFS is a Delaware corporation, qualified to do business in this State, and with offices here. Both NFS and Schultz were licensed as real estate brokers in New Jersey but neither was licensed as a broker by the State of New York.

The client, referred to in the agreement with Schultz, was Terratec Corp., a large engineering firm which, in March of 1979, withdrew from the deal because of other commitments. The real estate was not converted to cooperative ownership but, on June 6, 1979, Associates sold the property to Allen & Company, which was also a client of Schultz, and its joint venturer, American Continental Properties, Inc. Subsequently, by letter dated July 10, 1979, NFS, claiming entitlement to a fee under the terms of the February 28, 1979 agreement and the assignment, demanded an accounting. At the time, NFS had asserted that its vice-president, Steven Klein, arranged meetings between Phil Scaturo of Allen & Company and Postel on behalf of Associates.

When the NFS demand for a commission was refused, this action was commenced on September 7, 1982 to recover for the brokerage commissions alleged to be due because of the sale, the complaint, in eight causes of action, alleging that NFS was the procuring agent in introducing defendants to Allen & Company. Prior to service of an answer, defendants moved to dismiss, contending, *inter alia,* that the complaint failed to state a cause of action in that neither NFS nor Schultz was a duly licensed real estate broker in this State and, therefore, no action could be brought (Real Property Law, § 442-d). Plaintiffs crossmoved for summary judgment on their fourth, fifth and sixth causes to recover, respectively, for breach of contract, *quantum meruit* and unjust enrichment.

Special Term denied the cross motion as premature since no responsive pleading had been served, but granted the motion to dismiss as against Schultz in that the assignor, having assigned its right, title and interest to NFS, could not pursue any remedy. The court also dismissed the complaint by NFS, except for the fourth and fifth causes of action for breach of contract and *quantum meruit,* directing plaintiff to serve an amended pleading. In rejecting the contention that plaintiff could not recover any commission since it had no real estate broker's license in New York, although it was duly licensed in New Jersey, the court found that the statute was designed to ensure the trustworthiness and competence of the broker and not to impose "a mere technical barrier to doing business". Thus, it held that a real estate broker, licensed in another State and who could become licensed in New York merely by the ministerial act of filing, should not be thereby precluded from recovering a commission for brokerage services performed in this State.

Following service of an amended complaint, defendants again moved to dismiss, arguing that maintenance of the action would conflict with the proscription contained in section 442-d of the Real Property Law and that the first cause of action in the amended complaint for *quantum meruit* was barred by the Statute of Frauds (General Obligations Law, § 5-701). The motion was denied, Special Term treating it essentially as a motion to reargue and finding that the issue had been disposed of on the prior motion to dismiss. The Statute of Frauds defense was also rejected, the court holding that the New Jersey license acted to confer the same status and standing upon the broker as if a New York license had been obtained and, therefore, the Statute of Frauds was inapplicable with respect to licensed real estate brokers.

Section 442-d of the Real Property Law provides as follows: "No person, copartnership or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that

such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose."

The statute, in our view, is clear and specific. Subdivision 1 of section 440 of the Real Property Law defines "real estate broker" as one "who, for another and for a fee, commission or other valuable consideration, lists for sale, sells * * * exchanges, buys or rents, or offers or attempts to negotiate a sale * * * exchange, purchase or rental of an estate or interest in real estate". Section 442-d bars any action to recover compensation except upon allegation and proof that the person was a duly licensed real estate broker on the date the cause of action accrued (*Reed v Watson,* 244 App Div 522; *Gartrell v Jennings,* 283 App Div 879; *J. I. Kislak, Inc. v Carol Mgt. Corp.,* 7 AD2d 428).

It is undisputed that neither NFS nor its assignor, Schultz, had ever applied for a New York license under section 442-g of the Real Property Law, dealing with "Nonresident licensees". We find that the clear import of section 442-d of the Real Property Law operates to bar an unlicensed broker from commencing or maintaining an action to recover real estate brokerage commissions. The clarity of the legislative provision precludes speculation as to the legislative intent, as had been engaged in by Special Term. In any event, while plaintiff points to the underlying purpose of the licensing statute to protect the public in dealing with trustworthy and competent persons, we have in the past observed that "its principal aim seems to be the interdiction of acting and receiving commissions by real estate brokers who do not have a license." (*2 Park Ave. Assoc. v Cross & Brown Co.,* 43 AD2d 37, 38, affd 36 NY2d 286.) The statute applies to both residents and nonresidents of the State (*Reed v Watson, supra*).

*Eaton Assoc. v Highland Broadcasting Corp.* (81 AD2d 603) relied upon at Special Term, is distinguishable from the situation here. In that case, plaintiff had been retained to prepare, present and market a refinancing package for the defendant, the owner of two radio stations, which was in need of new financing to capitalize an expansion in its operations. Plaintiff sued to recover for services rendered in preparing a plan detailing, *inter alia,* sales, cash flow

and expenses, which plan was to be presented to potential lenders. In holding section 442-d of the Real Property Law inapplicable, the Appellate Division, Second Department, found that Eaton's services, in particular the preparation of a financial plan and the rendition of financial advice, were not services usually rendered by a real estate broker and that the mortgages obtained to secure necessary financing were incidental to the primary services rendered by Eaton. The court there relied, in part, upon our decision in *Gerstein v 532 Broad Hollow Rd. Co.* (75 AD2d 292) where we likewise found that the plaintiff in that case had been hired to obtain the benefit of his expertise and special knowledge and held that he did not act as a real estate broker in negotiating the terms of the assignment of the lease. Accordingly, section 442-d of the Real Property Law was held inapplicable and not a bar to the action. In our case, however, the central purpose and thrust of the agreement between defendants and Schultz, from which plaintiff derived its right, title and interest, was to pay a commission upon the negotiation and consummation of a sale between defendants and Schultz' client. The provision with respect to the obtaining of financing was incidental to the main thrust of the agreement, which centered upon the procuring of a buyer, i.e., the rendering of services usually performed by a real estate broker, "the dominant feature of the contract" (*J. I. Kislak, Inc. v Carol Mgt. Corp.,* 7 AD2d, at p 430).

Equally inapplicable here is *Collins Tuttle & Co. v Colgate Palmolive Co.* (114 Misc 2d 728) where plaintiff was a multistate real estate broker, licensed as such in both New Jersey and New York. Although two of its officers were brokers licensed in this State, they did not become licensed in New Jersey until after brokerage services had been rendered. Applying New Jersey law under the "grouping of contacts" or "center of gravity" test, Special Term there held that the action by the corporation was not barred by section 45:15-1 of the New Jersey Revised Statutes (citing *Tanenbaum v Sylvan Bldrs.,* 29 NJ 63). *Collins Tuttle,* however, involving a suit to recover for a share of commissions on the sale of real property located in New Jersey, is clearly distinguishable from our

case. Similarly, the situation here is not at all akin to the technical noncompliance with the licensing statute at issue in *Galbreath-Ruffin Corp. v 40th & 3rd Corp.* (19 NY2d 354) where the Court of Appeals, relying upon its prior holdings in *Bendell v De Dominicis* (251 NY 305) and *Roman v Lobe* (243 NY 51) observed that commission may not be recovered by a broker unlicensed at the time the services were rendered (19 NY2d, at pp 362-363): "These and other decisions are clear that the animating purpose of imposing this sanction on obtaining a real estate broker's license is the protection of the public, as in the case of licensing a lawyer or doctor, 'not to permit others to take advantage of the violation of the statute to escape their obligations' (POUND, J., in *Bendell* v. *De Dominicis,* 251 N. Y. 305, 310, *supra*)."

On this basis, we disagree with the determination by Special Term that the statutory purpose would not be served by barring a remedy to one who could become licensed merely by performing the ministerial act of filing, in accordance with the reciprocal provision in the sister State. The same analogy, applied to professionals, such as attorneys or doctors, would permit them to practice in the State without the formality of securing a license or authority to do so here, contrary to established practice and procedure. Such rationale is also inconsistent with the clear mandate of the statute, which expresses the public policy of the State, requiring that the plaintiff plead and prove that a New York license had been issued on the date when the cause of action arose (*Roman v Lobe, supra*). In the absence of such a showing, the complaint to recover real estate brokerage commissions should have been dismissed (*Gartrell v Jennings, supra*).

Accordingly, the order, Supreme Court, New York County (Alan J. Saks, J.), entered October 4, 1983, should be reversed, on the law, without costs or disbursements, the motion granted and the amended complete dismissed. The appeal from the order (same court), entered May 11, 1983, should be dismissed as academic, likewise without costs or disbursements.

SANDLER, J. P., ASCH and LYNCH, JJ., concur.

Order, Supreme Court, New York County, entered on October 4, 1983, unanimously reversed, on the law, without costs and without disbursements, the motion granted and the amended complaint dismissed. The appeal from the order of said court, entered on May 11, 1983, is dismissed as academic, without costs and without disbursements.